IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JANE DOE 5, BY AND THROUGH HER LEGAL GUARDIAN PARENTS, JOHN and JANE ROE 5
*Plaintiff,*
V.

X.AI CORP., X.AI, LLC, AND X CORP.
*Defendants.*

COMPLAINT

Civil Case No.______

**Jury Trial Demanded**

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Jane Doe 5, by and through her legal guardian parents, John and Jane Roe 5, for her original complaint against Defendants x.AI Corp., x.AI, LLC, and X Corp., (collectively "xAI" or "Defendants" to refer to the collective or to each Defendants in the alternative), alleges as follows:

## I. NATURE OF THE ACTION

1. This is an action arising from Defendant xAI Corp.'s and/or Defendant X.AI, LLC's and/or Defendant X Corp.'s deliberate design, development, commercialization, and deployment of an artificial intelligence image and video generation system, Grok and/or Grok Imagine (collectively referred to herein as "Grok"), that is capable of transforming ordinary photographs of identifiable children into sexually explicit images and videos, and into images and videos showing real identifiable children engaged in sexually explicit conduct. Rather than implementing readily available safeguards to prevent such unlawful and foreseeable misuse of their technology, Defendants chose to release and monetize a product that they knew, or at minimum should have known, could and would be used to digitally exploit children for commercial gain.

2. Plaintiff Jane Doe 5 ("Plaintiff" or "Jane Doe" or "Plaintiff Jane Doe") is currently a twelve-year old child whose identity was appropriated and exploited when Defendants' artificial intelligence system, Grok, generated sexually explicit images and/or videos depicting her likeness without her knowledge or consent. These sexual images of a child are the product of a capability that Defendants deliberately designed and commercialized, despite longstanding and well-documented warnings that generative AI capable of sexualizing real people would inevitably be used to sexually exploit children.

3. Although the images and videos were synthetically generated, the harm inflicted upon Plaintiff and her family is real, profound, and enduring. The unauthorized sexualization of a child through artificial intelligence invades the child's dignity, autonomy, privacy, emotional well-being, and fundamental right to control her own identity. The source of the exploitation does not diminish the resulting harm. Whether generated through artificial intelligence or captured by a camera, the injuries inflicted on the victim are the same. Plaintiff Jane Doe will forever live with the knowledge and fear that these fabricated images and video depicting her sexual abuse may continue to exist, be duplicated, altered, distributed, sold, and viewed by strangers, child predators, classmates, future employers, and countless others for potentially the rest of her life.

4. This case is not about unforeseen technological malfunctions. It is about Defendants' corporate conduct and their choices: their design choices, their safety decisions, their marketing and monetization decisions, their failure to implement reasonable safeguards, and their operation of a system that generated unlawful depictions of an identifiable child. Defendants' made a choice to monetize a system that they could have reasonably foreseen would be used to create

child sexual abuse material ("CSAM")[1], non-consensual intimate imagery, and sexually explicit deepfakes depicting identifiable individuals, including minors like Jane Doe.

5. Grok is a large language generative artificial intelligence ("AI") model developed and operated by Defendants xAI Corp, xAI LLC, and/or X Corp. that was used to manufacture and edit images and videos of Jane Doe. Defendants' Grok created and generated explicit photorealistic images and/or videos showing twelve-year-old Jane Doe undressed and engaged in sexual conduct. Defendants' Grok did not merely tolerate this. Grok was built to allow for this. Every other major AI image and video provider wholly refuses to generate sexual content of real people. xAI not only permits it generally, it permitted it for children. xAI built Grok with that particular feature, including a 'Spicy Mode' feature to create sexual content, which Defendants used as a selling point as part of xAI's campaign for a less censored image and video generator. Unlike its competitors, Defendants' Grok omits many safety layers used by other AI.

6. Defendants intentionally distinguished Grok from their competitors by promoting it as a less-restricted, more permissive, and boundary pushing platform, while simultaneously introducing features, like Spicy Mode, that were specifically designed to generate sexually explicit material. Defendants' public messaging, aimed to perpetuate Grok's usage, emphasized fewer content restrictions as a competitive advantage even though Defendants knew, or at minimum should have known, that generative AI systems like Grok could be exploited to create nonconsensual explicit imagery and child sexual abuse materials. Rather than strengthening safeguards to prevent foreseeable misuse, Defendants chose to commercialize and market those capabilities as features that differentiated Grok from competing products.

---

[1] The term CSAM is used to mean "child pornography" as defined by 18 U.S.C. § 2256(8). Plaintiff opts to use the term CSAM rather than "child pornography" because "pornography" implies a consensual acts between adults, whereas this material includes minors who cannot legally consent. Plaintiffs use the term CSAM throughout the complaint to mean "child pornography" as defined by 18 U.S.C. § 2256(8).

7. Defendants were repeatedly placed on notice through public reporting, industry research, governmental warnings, internal testing, user reports, and widespread public concern that their products presented these precise risks. Despite that knowledge, Defendants continued developing, deploying, and monetizing their artificial intelligence products and systems while failing to implement reasonable and available safety measures capable of substantially reducing or preventing the very harm suffered by Plaintiff Jane Doe.

8. The risks associated with Defendants' Grok product were not accidental byproducts of innovation. They were foreseeable consequences of conscious design and business decisions. Defendants prioritized rapid deployment, user engagement, competitive positioning, and commercial growth over the implementation of readily available safety mechanisms that could have significantly reduced, or even eliminated, the likelihood of the type of harm suffered by Jane Doe.

9. Every image and video created with Grok represents the permanent exploitation of Jane Doe. The unauthorized sexualization of a child through artificial intelligence invades the child's dignity, autonomy, privacy, emotional well-being, and the fundamental right to control her own identity. Jane Doe now faces the permanent possibility that fabricated child sex abuse material depicting her likeness will continue to circulate online, be viewed by strangers, traded by child predators, and remain accessible long into her adulthood. Unlike many injuries, these harms cannot simply be undone. Once released into the digital ecosystem, these images and videos may persist indefinitely despite every effort to remove them.

10. Defendants knew of the risks associated with generative artificial intelligence. These risks and the harm that could be caused were foreseeable, well documented, and openly

known and acknowledged in the artificial intelligence industry. Yet, Defendants disregarded these risks and accepted them as a cost of doing business.

11. This action seeks to hold Defendants accountable for developing and placing into the stream of commerce an AI product, Grok, without adequate safeguards against its most foreseeable and dangerous misuse: the creation of sexually explicit images and videos depicting identifiable children. Plaintiff brings this action to recover the full measure of damages authorized by federal and Arkansas law for the profound and permanent injuries she suffered as a direct and proximate result of Defendants' design, development, commercialization, marketing, and deployment of Grok, an artificial intelligence platform that allegedly lacked reasonable safeguards against one of its most foreseeable and devastating risks: the creation of sexually explicit images depicting identifiable children. Plaintiff seeks relief under four principal bodies of law. Plaintiff asserts claims for relief under four (4) general categories:

12. **First, Plaintiff asserts Federal Statutory Claims**, including civil remedies under Masha's Law, 18 U.S.C. § 2255(a), arising from Defendants' violations of Chapter 110 of Title 18, including 18 U.S.C. §§ 2251(a), 2252A(a)(2), 2252A(a)(5)(B), 2252A(a)(7), and 2252A(f)(1), together with all other applicable federal statutory remedies arising from Defendants' alleged production, possession, receipt, distribution, reporting failures, facilitation, and commercialization of child sexual abuse material ("CSAM").

13. **Second, Plaintiff asserts Arkansas Statutory Claims**, including claims arising under Arkansas's Sexually Explicit Digital Forgery Act, Ark. Code Ann. §§ 5-14-139 and 16-118-119; Arkansas's Vulnerable Victim Civil Remedy, Ark. Code Ann. § 16-118-118; the Frank Broyles Publicity Rights Protection Act, Ark. Code Ann. §§ 4-75-1101 through 4-75-1113; the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101 et seq., §§ 4-88-107(a)(10),

§§ 4-88-113(f); and the Arkansas Product Liability Act, Ark. Code Ann. §§ 16-116-101 through 16-116-107, based upon Defendants' defective product design, failure to incorporate reasonable and available safety measures, failure to provide adequate warnings, deceptive and unfair business practices, commercialization of Plaintiff's identity, and other conduct rendering Grok unreasonably dangerous for its intended and foreseeable uses.

14. **Third, Plaintiff asserts Arkansas Common-Law Claims**, including strict products liability, negligent design, negligent development, negligent testing, negligent training, negligent deployment, negligent monitoring, negligent content moderation, negligent failure to detect, remove, and timely report CSAM, negligent undertaking, invasion of privacy (including appropriation of name or likeness and false light), misappropriation of identity, unjust enrichment, and the tort of outrage (intentional infliction of emotional distress), arising from Defendants' conduct before, during, and after Grok's release, including the design, development, testing, deployment, marketing, commercialization, licensing, operation, safety oversight, and post-sale management of Grok despite its known and foreseeable capacity to facilitate the sexual exploitation of children.

15. **Fourth, Plaintiff seeks all damages and other relief authorized by federal and Arkansas law**, including compensatory damages, statutory damages, enhanced damages where authorized by law, punitive damages, disgorgement and restitution where authorized, attorney's fees and costs where recoverable by statute, prejudgment and post-judgment interest, permanent injunctive and equitable relief requiring the implementation of reasonable safety measures and other appropriate remedial actions, together with all further legal and equitable relief to which Plaintiff may be justly entitled.

## II. JURISDICTION & VENUE

16. The Court has subject matter jurisdiction under 28 U.S.C. §§1331 because this action arises under the 18 U.S.C. §§ 2251(a), 2255(a), 2252A.

17. The Court has diversity jurisdiction under 28 U.S.C. §§1332(a)(1) because there is complete diversity among the parties and an amount in controversy that exceeds $75,000.00.

18. Pursuant to 28 U.S.C. §§1367(a), the Court may exercise supplemental jurisdiction over these state claims.

19. This Court has personal jurisdiction over Defendants because Defendants have purposely availed themselves of the privilege of conducting business in this District, including but not limited to establishing substantial and continuing contacts with the State of Arkansas by intentionally marketing, distributing, licensing, commercializing, operating, and maintaining their digital and AI platforms, including Grok, and its associated technologies for use by Arkansas residents. Defendants have derived substantial commercial benefit from those activities, and directing their products and services into Arkansas with the expectation that they would be used within this State and within this judicial district. Plaintiff's claims arise directly from those contacts because the photographs depicting Plaintiff Jane Doe were uploaded to Grok from Arkansas, and used through Grok to generate, possess, and distribute CSAM in Arkansas. Additionally, this Court has personal jurisdiction over Defendants pursuant to the nationwide service of process provision found in 18 U.S.C. § 2255(c)(1).

20. Venue is proper under 28 U.S.C. § 1391(b) because Defendants purposefully conducted business within this District, including marketing, licensing, distributing, commercializing, and operating Grok and its related AI technologies for use by residents of this District.

## III. <u>PARTIES</u>

21. Plaintiff Jane Doe is a twelve (12) year-old female who resides in North Carolina, and who was a minor during the relevant time period.

22. x.AI LLC is a Nevada limited liability company wholly owned subsidiary of x.AI Corp.

23. x.AI Corp. is a Nevada Corporation and wholly owned subsidiary of x.AI Holdings LLC.

24. x.AI Holdings LLC is a Nevada corporation, and as of February 2, 2026, a wholly owned subsidiary of SpaceX Corp.

25. X Corp. is a Nevada corporation with its principal place of business in Bastrop, Texas. Its indirect parent company is xAI Holdings LLC.

26. xAI owns the generative AI model known as Grok, and the image and video generators Grok Imagine, (collectively referred to herein as "Grok").

## IV. FACTS

27. This action arises from Defendants' conscious decision to design, market, and monetize an artificial intelligence platform with limited safeguards, significantly lesser than those employed by other AI developers, despite the well know and foreseeable risks that such AI technology could be used to create and generate sexually explicit deep fakes and child sex abuse material.

28. It has been long and well known within the AI industry, including to Defendants, that robust safeguards were necessary to prevent the company's own AI product design, for example Grok, from being exploited by child predators—to prevent AI from being used to generate and disseminate illegal and exploitative images and videos of innocent children. In total disregard of such industry knowledge, Defendants developed and marketed Grok, including its "Spicy

Mode," specifically aimed to disregard industry standards and norms, and allow Grok to create sexualized images and videos. Very early on Defendants were well aware that Grok could be used to create sexualized deep fakes and CSAM. Defendants knew, or at minimum, should have known that Grok would be used to exploit real children, like twelve-year old Jane Doe.

**A. xAI and Grok**

29. xAI is an artificial intelligence company founded by Elon Musk in 2023 to develop and commercialize frontier generative artificial intelligence technologies capable of competing with the world's most advanced AI systems. From the day that Elon Musk announced xAI, he told the world that his artificial intelligence would be different from every other AI on the market: it would not be safe, cautious, or filtered, it would be "rebellious." xAI built Grok, wired it directly into the X platform, gave it the ability to generate images and video of real people on command, and then sold the less-restricted, "Spicy," version of that technology as a premium, revenue-generating product, even after regulators, journalists, and victims around the world began documenting the predictable result.

30. On November 4, 2023, Defendants announced their new chatbot, Grok. Defendants' Grok and/or Grok Imagine is a generative AI model capable of generating and editing images and videos from text-based prompts. Grok's technical lineage moved quickly from prototype to flagship product. Defendants' team trained an initial 33-billion-parameter model, Grok-0, within months of the company's founding, then iterated through Grok-1, Grok-2, and Grok-3 before releasing Grok-4 and, on July 8, 2026, Grok-4.5, each successive model trained on xAI's purpose-built supercomputing infrastructure.

31. From the outset, Defendants designed Grok to run through the social media platform X, formerly Twitter, a platform Musk owns and controls. Defendants have described

Grok's unique and fundamental advantage of having real-time access to posts and data flowing through X, unlike competitor chatbots trained only on static datasets.

32. Grok and Grok Imagine are built on a class of machine-learning architecture known as diffusion models, the same general category of technology underlying other commercial image generators. Unlike a search engine, a hosting platform, or a social-media feed, a diffusion model contains learned numerical parameters (“weights”) that encode statistical relationships between images and language. The model performs an iterative computational process, beginning from random noise and progressively refining that noise into a wholly new arrangement of pixels calculated to match the prompt. Every pixel of the output is calculated by Grok itself, in real time, at the moment of the request.

33. Grok and Grok Imagine can create “deepfakes,” images/videos where an AI model has a digitally altered real person’s body, voice, or likeness, making someone do or say something that never happened. Defendants’ Grok is capable of digital undressing, a process where a Grok generates an image or video with a real live persons photo, of that person nude, undressed, undressing, or in sexually explicit attire.

34. When a user prompts generative AI, like Defendants Grok, to create an image or video, the AI model pulls from what it has learned through the course of its global training and continued input it receives from all of the sources it pulls, in order to create entirely new content of its own.[2] The AI model continues to undertake an iterative process and refine the visual static to create a coherent image or video that fits the prompt of input, and parameters provided by its training. These images and videos are new and unique, and a direct product of the AI system that generated them. When someone uploads a photograph and asks Grok to alter it, to remove clothing,

[2] Franceschelli, Giorgio, et al., *Training Foundation Models as Data Compression: On Information, Model Weights and Copyright Law*, https://arxiv.org/abs/2407.13493 (Mar. 12, 2025).

to depict undressing, or to depict sexual conduct, Grok does not edit or crop the uploaded file the way ordinary photo-editing software would. Grok instead uses the uploaded photograph only as a reference for what the subject looks like, her face, her proportions, her identifying features, and generates an entirely new synthetic image constrained to match those features while depicting whatever nudity, undressing, or sexual conduct the prompt calls for. The resulting image looks like Jane Doe because Grok was designed to make it look like her. That is not an accident of the technology; it is the technology performing the exact function Defendants built it to perform. The images and videos that Grok creates, as well as the images input into Grok, are forever stored in Grok's system and used for later learning. The effect is that potentially one day, years down the road, a user may request a sexually explicit image of a child matching Jane Doe's description, and Grok will provide the image it created of Jane Doe with a likeness to the real Jane Doe as a result of its learning and storage capabilities.

35. At every step of this process—training the model, setting its default content policies, building and marketing an opt-in "Spicy Mode" configuration, determining what image-input and output-side filters (if any) would run, and deciding whether to block, allow, or flag a given generation—the relevant decisions were made by Defendants, embodied in software Defendants own and operated on servers Defendants control.

36. Defendants' platforms, X Premium and X Premium+ subscribers receive automatic access to Grok bundled into their platform subscription, tying the chatbot's growth directly to X's subscriber base. In March 2025, Musk folded the two companies together entirely. He sold X to xAI in an all-stock transaction that valued X at $33 billion formally merging the company that makes Grok with the platform that supplies its real-time data, its user base, and, critically, the public feed in which any user can invoke Grok.

37. Since its inception, Defendants' Grok has continued to spark controversy and create issues of tantamount concern involving deepfakes, CSAM, and other lascivious content of the most offensive nature.

38. While other AI companies, tailored and trained and built in safeguards to prevent their own proprietary AI from generating this type of highly offensive, obscene, defamatory, and child pornographic materials, Defendants ignored all warnings and continued to tout their AI, including Grok, as honest and free—all the while, Grok continued to make this material, largely uncensored. Defendants instructed the public on how to use Grok in Spicy Mode to generate illicit content:



[3]

39. Between December 29, 2025 and January 8, 2026, The Center for Countering Digital Hate analyzed a sample of 20,000 images of 4.6 million images produced by Grok during that time, and applying statistics, estimated that Defendants' Grok generated 3 million sexualized

[3] Grok (@grok) https://x.com/grok/status/1985396372900925660, X (Nov. 3, 2025).

images—more than 50% of the total—including 23,000 that appeared to depict children during that short, less than two-week, time period.[4]

40. A properly configured output-side classifier operating anywhere near industry norms would not permit that volume of apparent child sexual abuse material to be generated, let alone published to the public X platform, over a two-week window. Grok produced that volume of material because Defendants chose not to build in the protections that would have stopped it — not because doing so was impossible. The only plausible technical explanations are that (a) no meaningful output classifier was operating, (b) an existing classifier's threshold was deliberately or negligently set to allow this material through, or (c) known positive detections were not acted upon. Each is a design, configuration, or operational choice attributable to Defendants, not an unavoidable byproduct of generative technology.

41. By January 2026, these types of issues with Defendants' platforms, including Grok and Grok Imagine, had grown so rampant that Attorney Generals from 35 states issued a formal letter to Defendants expressing their deep concern about Defendants' "artificial-intelligence produced deepfake nonconsensual intimate images (NCII) of real people, including children." *See* Exhibit A, January 23, 2026, Letter to xAI authored and endorse by 35 State Attorney Generals. That letter states, among other matters,

> **Grok merits special attention given evidence that it both (1) promoted and facilitated the production and public dissemination of such images, and (2) made it all as easy as the click of a button. We strongly urge you to be a leader in this space by further addressing the harms resulting from this technology…. you claim to have implemented technical measures to prevent the @Grok account "from allowing the editing of images of real people in revealing clothing such as bikinis." But we are concerned that these efforts may not have completely solved the issues….**

[4] Grok Floods X With Sexualized Images of Women and Children, CENTER FOR COUNTERING DIGITAL HATE, https://counterhate.com/research/grok-floods-x-with-sexualized-images/ (Jan. 22, 2026).

> **For several years, both states and industry members have worked to curtail so-called "nudify" tools. These AI tools have been sought out by some internet users to embarrass, intimidate, and exploit people by taking away their control over how their bodies and likenesses are portrayed…**
>
> **Grok was not only enabling these harms at an enormous scale but seemed to be actually encouraging this behavior by design. xAI purposefully developed its text models to engage in explicit exchanges and designed image models to include a "spicy mode" that generated explicit content, resulting in content that sexualizes people without their consent. The company has repeatedly used such capabilities as selling points for Grok. The ability to create nonconsensual intimate images appeared to be a feature, not a bug…**
>
> **Grok allowed users to alter innocuous images of women, without their knowledge or consent, depicting them in suggestive and sexually explicit scenarios and "undressing" them to show them in bikinis, underwear, or nothing at all. Grok-generated nonconsensual intimate images are being used to harass public figures and ordinary social media users alike. Most alarmingly, Grok has even altered images of children to depict them in minimal clothing and sexual situations. Grok users have reportedly produced photorealistic images of "very young" people engaged in sexual activity. And many of these images have been made available for the world to see on the public X platform….**

42. *See* Exhibit A (internal citations omitted). At all times, Defendants were specifically aware of the grave and actual dangers posed by their AI, yet they continued to fail to implement safeguards to prevent further dangers of this exact variety.

43. Had Defendants implemented safeguards, filters, and other security mechanisms, Plaintiff Jane Doe would never have been victimized.

**B. Plaintiff Jane Doe**

44. Jane Doe is a twelve (12) year old girl in North Carolina who wants to be a cheerleader for her middle school, she is athletic, loves reading anime, and volunteers at her church Sunday school. Like many girls of that age, she is shy and blissfully ignorant to the harsh realities of the world in which we live in. Based upon information and belief, it is believed that images from when she was as young as eight (8) or nine (9) years old were used by Grok and turned into CSAM.

45. In June 2026, John and Jane Roe were contacted by the local police authorities, who alerted her that Defendants' Grok was generating and disseminating CSAM images and videos using Jane Doe's images. According to the authorities, Defendants' Grok was generating CSAM of Jane Doe by a user(s) inputting real images taken of her as the primary source. In addition to CSAM images and videos that Grok created of Jane Doe, Defendants' Grok created thousands of images and videos of other children as well.

46. Based upon information and belief, Defendants' Grok generated and disseminated dozens of CSAM images and videos of Plaintiff Jane Doe that showed Jane Doe's entire 12-year old body, nude, including her genitals, and without any clothes. Grok's images and videos portrayed 12-year old Jane Doe engaged in various sex acts, and showed her undressing until she was entirely nude.

47. Had Defendants heeded to the words of the extensive Attorney Generals, among others, and implemented safeguards and other security mechanisms that they knew at all times how to implement, this harm would never have occurred.

48. Jane Doe and her family have been completely devastated by these violations. Her family has sought extensive counseling, Jane and John Roe have dealt with anxiety, lost sleep, cancelled trips, and severe life interruption as a result of this matter. The consequences have been devasting and will continue to cause injuries for years to come.

49. The harm that Plaintiff has suffered to date from Defendants' production of AI-generated CSAM is severe and continuing. The consequences of this will never cease—Plaintiff, and her family, will live the rest of her life knowing that CSAM images and videos exist of her in the ether.

**C. Defendants' Grok generated Child Sex Abuse Material is Illegal**

50. Title 18 U.S.C. § 2256(8) defines child pornography (aka CSAM),[5] as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—(A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." 18 U.S.C. § 2256(8).

51. "An identifiable minor" includes a person who was "a minor at the time the visual depiction was created, adapted, or modified; or whose image as a minor was used in creating, adapting, or modifying the visual depiction; and who is recognizable as an actual person by the person's face, likeness, or other distinguishing characteristic, such as a unique birthmark or other recognizable feature[.]" 18 U.S.C. § 2256(9).

52. Title 18 U.S.C. §§ 2252A(a)(2) proscribes the knowing distribution of "child pornography," and § 2252A(a)(5)(B) proscribes the knowing possession of "child pornography." Production with the intent to distribute "child pornography" under 18 U.S.C. § 2252A(a)(7) proscribes "knowingly produc[ing] with intent to distribute, or distribut[ing], by any means, including a computer, in or affecting interstate or foreign commerce, child pornography that is an adapted or modified depiction of an identifiable minor." 18 U.S.C. § 2252A(a)(7).

53. Real child pornography is not protected speech under the First Amendment. *Osborne v. Ohio*, 495 U.S. 103 (1990); *New York v. Ferber*, 458 U.S. 747 (1982). Nor is morphed

[5] Plaintiffs employ CSAM with the same meaning as 18 U.S.C. § 2256(8) sets forth for "child pornography." Plaintiffs use the term CSAM to recognize the severity of the crime depicted in the material and avoid re-victimizing the survivors.

child pornography—"any visual depiction . . . whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where . . . such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct"—protected speech. *United States v. Hotaling*, 634 F.3d 725 (2d Cir. 2011); *United States v. Mecham*, 950 F.3d 257 (5th Cir. 2020); *Doe v. Boland*, 698 F.3d 877 (6th Cir. 2012). *See also Shoemaker v. Taylor*, 730 F.3d 778, 786–87 (9th Cir. 2013).

54. Defendants' Grok generated CSAM images and videos of Jane Doe qualifies as the production of child-pornography § 2252A(a)(7) because it involves the morphing, editing, adaption, or modification of the images and videos of a real child, fully retaining her identifiable features to produce sexually explicit content.

55. The images and videos of Jane Doe depicting her completely nude and/or engaged in sex acts, constitute CSAM pursuant to 18 U.S.C. § 2256(8), because Grok generated, morphed, edited, adapted, and/or modified the original image files to depict the simulated lascivious exhibition of Jane Doe's genitals and engaging in sex acts. Jane Doe's body was manipulated to produce sexually suggestive content, and posed in an unnatural, i.e. sexual, way given the setting of the original images. The sole purpose behind such generating, morphing, modification, and alteration was to create sexual content and to elicit a sexual response in the viewer.

56. Jane Doe has learned from the local authorities that Defendants' Grok created thousands of CSAM images and videos of Jane Doe and other child victims whereby the someone input real life photographs of children into Defendants' Grok to generate the CSAM. The scope of harm is not fully identified at this time, and will continue.

57. Jane Doe and her family have suffered and will continue to suffer severe emotional distress as a result of the production and distribution of this Grok generated CSAM. Her family

feels severe and acute anxiety over who has presently viewed these files online, who may eventually view these files, and their normal daily activities have been severely detrimentally impacted by this, including development of overwhelming anxiety, depression, fear, and stress. Jane Doe's parents, John and Jane Roe have experienced immense anxiety over this and have been living in constant fear that these CSAM images and videos will persist and exist through Jane Doe's lifetime—there is no way to be certain that they are fully eliminated, ever. Jane Roe has sought extensive therapy, and will continue to seek therapy, as a result of all of this and the anxiety, and distress this is causing. Child predators could continue to possess, and trade these images and videos, or use those already created to further modify them with AI. Jane Doe could suffer reputational damages and harm from this as the CSAM materials do not make clear that they are not her—they look exactly like her, but show her engaged in sex abuse that never actually occurred. These CSAM images and videos could be traded and maintained by pedophiles for eternity.

58. For the rest of their lives, Jane Doe and her parents John and Jane Roe will live each day in constant anxiety of not knowing whether someone they encounter has seen this invasive and sexually explicit content of their child Jane Doe.

## V. CAUSES OF ACTION AS AGAINST ALL DEFENDANTS

59. Plaintiff re-alleges and incorporates by reference each and every preceding and succeeding paragraph as though set forth fully at length herein.

60. These causes of action arise from Defendants' own generative-AI technology generating new visual depictions using Plaintiff's actual image and likeness. Defendants designed, developed, operated, and controlled the technology that created the unlawful CSAM depictions or a real child. The resulting images and videos did not exist before Grok generated them.

61. Plaintiff seeks redress for the injuries caused by Defendants' own generation and transmission of those depictions, as well as Defendants' independent conduct in designing, marketing, deploying, and operating Grok despite the foreseeable risk that the technology would be used to sexually exploit identifiable children.

### A. Federal Statutory Claims

**COUNT 1**

**Masha's Law: Production of Child Pornography – 18 U.S.C. §§ 2255(a), 2251(a)**

62. Plaintiff re-alleges and incorporates by reference each and every preceding and succeeding paragraph as though set forth fully at length herein.

63. Plaintiff was a minor at all relevant times and was under eighteen (18) years of age when the conduct giving rise to this action occurred.

64. Plaintiff brings this Count pursuant to Masha's Law based on Defendants' violation of 18 U.S.C. § 2251(a), which prohibits the use of a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct.

65. 18 U.S.C. § 2255(a) provides that any person who, while a minor, suffered a personal injury as a result of a violation of specified provisions of 18 U.S.C. Chapter 110 (Sexual Exploitation and Other Abuse of Children) may sue the perpetrator, and any person who knowingly received, distributed, or possessed a visual depiction of that minor produced or possessed in violation of those provisions, in the minor's own name for the damages sustained.

66. Plaintiff was a victim of conduct constituting a violation of 18 U.S.C. § 2251(a), as alleged herein, and suffered personal injury as a result.

67. Defendants' AI technology generated, produced, and/or transmitted CSAM images and videos of Plaintiff Jane Doe, to depict her (a minor) engaged in sexually explicit conduct. 18 U.S.C. § 2251(a). Defendants' Grok produced this CSAM on Defendant xAI's own servers. Defendants designed and released their AI technology with capabilities of producing CSAM, and at the time that the CSAM of Jane Doe was produced, Defendants had knowledge of the broad use of Grok to create, generate, and transmit CSAM, exactly of the nature that was done in this case.

68. Plaintiff Jane Doe was a minor at all times relevant to the conduct alleged in this Complaint. Defendants' Grok image and video-generation functionality generated, and thereafter distributed, retained, and/or failed to remove, one or more visual depictions of Plaintiff without clothes and/or engaged in sexually explicit conduct, using Plaintiff's likeness without consent, in a manner that constitutes a predicate violation of § 2251 and/or § 2252A.

69. The images and/or videos that Grok generated incorporated Plaintiff's actual face, likeness, and/or other identifying characteristics that Plaintiff was recognizable as the person depicted.

70. Defendants themselves, through Grok and the systems Defendants designed, operated, and controlled, produced the unlawful visual depictions of Plaintiff and, as alleged herein, committed the predicate violations giving rise to Plaintiff's civil remedies under 18 U.S.C. § 2255(a).

71. As a direct and proximate result of Defendants' violations of the predicate offenses identified above, Plaintiff has suffered severe emotional distress, reputational harm, humiliation, invasion of privacy, and other damages to be proven at trial.

72. The conduct depicted in the resulting images constitutes "sexually explicit conduct" within the meaning of 18 U.S.C. § 2256(2), which includes actual or simulated sexual intercourse, masturbation, and lascivious exhibition of the anus, genitals, or pubic area.

73. Defendants' Grok generated CSAM photographs and/or videos of Plaintiff, visual depictions, through computer systems, servers, software, and internet-based services operated and controlled by Defendants. Section 2256(3) defines "producing" broadly to include producing, directing, manufacturing, issuing, publishing, and advertising, and § 2256(5) expressly includes electronically stored or transmitted computer data capable of conversion into a visual image within the definition of "visual depiction."

74. Section 2255(a) entitles a prevailing minor plaintiff to the greater of actual damages or liquidated damages in the amount of $150,000, together with punitive damages and reasonable attorneys' fees and costs. Plaintiff seeks all remedies available under § 2255(a), (b), and (d). Plaintiff intends to prove actual damages as a result of Defendants' conduct. Plaintiffs intend to seek statutory liquidated damages in the amount of $150,000 per violation against Defendants, as well as the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, prejudgment and post-judgment interest, and such other relief as the Court deems appropriate, pursuant to both 18 U.S.C. §§ 2255(a) and 2252A(f).

75. Defendants' conduct, as described above, was intentional, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of Plaintiff, and warrants an award of punitive damages in an amount sufficient to punish Defendants and deter others from like conduct.

**COUNT 2**

**<u>Masha's Law: Production with the Intent to Distribute Child Pornography</u>**

**<u>18 U.S.C. §§ 2255(a), 2252A(a)(7)</u>**

76. Plaintiff re-alleges and incorporates by reference each and every preceding and succeeding paragraph as though set forth fully at length herein.

77. Plaintiff brings this Count pursuant to Masha's Law based on Defendants' violation of 18 U.S.C. § 2252A(a)(7), which prohibits the knowing production with intent to distribute, or distribution, by any means, including a computer, in or affecting interstate or foreign commerce, child pornography that is an adapted or modified depiction of an identifiable minor.

78. Section 2256(8)(C) defines "child pornography" to include a visual depiction that has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct. Section 2256(9) further defines an "identifiable minor" to include a person whose image as a minor was used in creating, adapting, or modifying the visual depiction and who is recognizable as an actual person by that person's face, likeness, or other distinguishing characteristic.

79. Defendants' AI technology produced CSAM, using Plaintiff's real images to depict them as "minor[s] engaging in sexually explicit conduct." 18 U.S.C. § 2252A(a). Defendant xAI then distributed the AI-generated CSAM images and videos from Defendant xAI servers, or over the internet, a means of interstate commerce, to customers, including customers paying for this premium feature, and to customers of third-parties. In each instance, Defendants created their AI technology with capabilities that made distributing such CSAM possible.

80. In all instances, the real images used as the reference images only became unlawful content after Defendants' AI morphed the files to produce and distribute images or videos of Plaintiff as "minor[s] engaging in sexually explicit conduct." 18 U.S.C. § 2252A(a). Grok used

Plaintiff's photograph(s) and identifying characteristics as source material to create new computer-generated visual depictions. Grok altered, transformed, adapted, and/or modified the original photograph so that Plaintiff appeared to be nude and/or engaging in sexually explicit conduct. The resulting visual depictions retained Plaintiff's recognizable identity and likeness.

81. Plaintiff was therefore an "identifiable minor" within the meaning of § 2256(9), because her image as a minor was used in creating, adapting, and/or modifying the resulting depictions and she remained recognizable by her face, likeness, and/or other distinguishing characteristics. The resulting images were not merely fictional images of children. They were computer-generated depictions created from Plaintiff's actual image and made to appear that Plaintiff herself was engaging in sexually explicit conduct.

82. Plaintiffs suffered personal injury as a result of Defendants' violation of 18 U.S.C. § 2252A(a)(7). Defendants' production and/or distribution of these adapted or modified depictions of Plaintiff constitutes conduct prohibited by 18 U.S.C. § 2252A(a)(7).

83. 18 U.S.C. § 2252A(f)(1) provides that "[a]ny person aggrieved by reason of the conduct prohibited under subsection (a) or (b)" may commence a civil action and seek relief including "(A) temporary, preliminary, or permanent injunctive relief; (B) compensatory and punitive damages; and (C) the costs of the civil action and reasonable fees for attorneys and expert witnesses." 18 U.S.C. § 2252A(f).

84. Title 18 U.S.C. § 2255, entitled "Civil Remedy for Personal Injuries," provides that any person who is a victim of a violation of 18 U.S.C. § 2252A and who suffers personal injury as a result of such violation shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000 per victim, and reasonable attorney's fees.

85. Plaintiff intends to prove actual damages as a result of Defendants' conduct. At minimum, Plaintiff intends to seek statutory liquidated damages in the amount of $150,000 per violation against Defendants, as well as the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, prejudgment and post-judgment interest, and such other relief as the Court deems appropriate, pursuant to both 18 U.S.C. §§ 2255(a) and 2252A(f).

86. Defendants' conduct, as described above, was intentional, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of Plaintiff, and warrants an award of punitive damages in an amount sufficient to punish Defendants and deter others from like conduct.

**B. Arkansas Statutory Claims**

**COUNT 3**

**VIOLATION OF THE ARKANSAS SEXUALLY EXPLICIT DIGITAL FORGERY ACT - Ark. Code Ann. §§ 5-14-139, 16-118-119**

87. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

88. Ark. Code Ann. § 5-14-139 makes it unlawful to knowingly create or distribute "deepfake visual material" depicting an identifiable person, without that person's consent, in a state of nudity or engaging in sexual contact, sexual intercourse, deviate sexual activity, or sexually explicit conduct, where an ordinary person viewing the material would conclude it depicts the identifiable person engaging in that conduct. "Deepfake visual material" is defined as a photograph, image, or video that appears authentic to an ordinary person but was generated, modified, or adapted using technology to falsely depict a person's appearance, voice, or conduct.

89. Ark. Code Ann. § 16-118-119(b) creates a private civil action for a person injured by reason of a violation of § 5-14-139 against (i) the provider or developer of the image-generation technology used to create the deepfake visual material, or (ii) any person or entity that caused or was responsible for the creation of the deepfake visual material in violation of § 5-14-139. The statute authorizes actual damages, compensatory damages, punitive damages, injunctive relief, and any other appropriate relief, and mandates an award of reasonable attorneys' fees and costs to a prevailing plaintiff. Ark. Code Ann. § 16-118-119(b)(3).

90. Defendants are the provider and/or developer of the Grok image and video generation technology used, without Plaintiff's consent, to knowingly create deepfake visual material depicting Plaintiff — an identifiable, real person — in a state of nudity and/or engaged in sexually explicit conduct, such that an ordinary person viewing the material would conclude it depicted Plaintiff engaging in that conduct.

91. Plaintiff did not consent to the creation, retention, or distribution of the deepfake visual material depicting her, and no exemption under § 5-14-139(d) applies, because Defendants' own generative technology, not merely a third party operating independently of that technology, created the unlawful depiction.

92. As a direct and proximate result of Defendants' violation of § 5-14-139, Plaintiff has been injured within the meaning of § 16-118-119(b) and is entitled to actual, compensatory, and punitive damages, injunctive relief, and an award of attorneys' fees and costs.

## COUNT 4

## VIOLATION OF ARKANSAS'S VULNERABLE VICTIM CIVIL REMEDY — ARK. CODE ANN. § 16-118-118

93. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

94. The Justice for Vulnerable Victims of Sexual Abuse Act, codified at Ark. Code Ann. § 16-118-118, permits a "vulnerable victim"[6] to bring a civil action, notwithstanding any otherwise-applicable statute of limitation, against any party who committed sexual abuse against the vulnerable victim or whose tortious conduct caused the vulnerable victim to be a victim of sexual abuse. The statute authorizes actual damages, compensatory damages, punitive damages, injunctive relief, and any other appropriate relief.

95. Plaintiff was a minor, and therefore a "vulnerable victim" as defined by § 16-118-118, at the time of the conduct alleged herein. Plaintiff alleges that Defendants' Grok's creation, generation, and dissemination of sexually explicit deepfake material constitutes, or was tortious conduct that caused her to be a victim of, "sexual abuse" as that term is used and defined for purposes of this section, and Plaintiff will develop through discovery and, if necessary, expert testimony, the basis for treating Defendants' conduct as sexual abuse or as tortious conduct causing her to be a victim of sexual abuse within the meaning of the Act.

96. Defendants' tortious conduct, including the negligent design, deployment, and moderation of generative technology that produced and disseminated sexually explicit material depicting Plaintiff as a minor, caused Plaintiff to become a victim of sexual abuse within the meaning of § 16-118-118(b)(1).

97. Plaintiff is entitled to actual, compensatory, and punitive damages, injunctive relief, and such other relief as the Court deems appropriate under § 16-118-118(d).

## **COUNT 5**

## **VIOLATION OF THE FRANK BROYLES PUBLICITY RIGHTS PROTECTION ACT OF 2016 — ARK. CODE ANN. §§ 4-75-1101–1113**

---

[6] Defined to include a person who was a minor at the time he or she was a victim of sexual abuse.

98. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

99. Ark. Code Ann. § 4-75-1104 grants every individual a property right in the commercial use, by any medium, of that individual's name, voice, signature, photograph, or likeness, and prohibits such commercial use without the individual's prior consent. Ark. Code Ann. § 4-75-1108 makes unauthorized commercial use of a protected likeness actionable, and § 4-75-1109 authorizes a civil action for damages, including actual damages and any profits from the unauthorized use that are attributable to that use and not taken into account in computing actual damages.

100. Defendants used Plaintiff's photograph and/or likeness, through Defendants' generative technology Grok to create sexually explicit depictions of Plaintiff, and that use occurred in connection with, and furthered the commercial exploitation of, Defendants' Grok product and subscription offerings, without Plaintiff's prior consent.

101. Plaintiff maintains, or maintained at all relevant times, a domicile or residence in the State of Arkansas, satisfying the Act's applicability requirement. Ark. Code Ann. § 4-75-1113(b).

102. As a direct and proximate result of Defendants' unauthorized commercial use of Plaintiff's likeness, Plaintiff has suffered damages, and Defendants have been unjustly enriched by profits attributable to that unauthorized use, in amounts to be proven at trial.

## COUNT 6
## VIOLATION OF THE ARKANSAS PRODUCT LIABILITY ACT
## ARK. CODE ANN. §§ 16-116-101–107

103. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

104. The Arkansas Product Liability Act broadly governs any "product liability action," defined to include all actions brought for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, packaging, labeling, or marketing of any product, including actions grounded in strict liability in tort, negligence, breach of warranty, or failure to adopt reasonable safety measures.

105. Defendants' Grok generative-AI product was, at all relevant times, designed, developed, tested, marketed, and distributed by Defendants. Plaintiff pleads the following defect theories in the alternative, within this single statutory product-liability count:

106. **Design Defect**: Defendants designed and released image- and video-generation functionality that was capable of producing sexually explicit depictions of identifiable real minors from ordinary prompts, without reasonably available technical safeguards — such as facial-recognition-based refusal, age-estimation filtering, or output-side CSAM detection — that were feasible at the time of design and would have prevented or materially reduced the risk of the harm alleged.

107. **Failure to Warn**: Defendants failed to warn users, minors, parents, or the public of the known or knowable risk that Defendants' generative technology could be used to create non-consensual sexually explicit depictions of identifiable, real individuals, including minors.

108. **Failure to Incorporate Reasonable Safety Features**: Defendants failed to incorporate reasonably available safeguards — including content-moderation classifiers, prompt-filtering, output-filtering, and reporting mechanisms to the National Center for Missing & Exploited Children or law enforcement — that other providers of comparable generative-AI

products had adopted or could feasibly have adopted, and that would have prevented or mitigated the harm to Plaintiff.

109. Each of the foregoing defects existed at the time the product left Defendants' control, rendered the product unreasonably dangerous within the meaning of the Act, and was the proximate cause of Plaintiff's injuries.

## COUNT 7

## VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

## ARK. CODE ANN. § 4-88-101 ET SEQ.

110. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

111. The Arkansas Deceptive Trade Practices Act ("ADTPA") prohibits deceptive and unconscionable trade practices in connection with the advertisement or sale of goods and services, including, as relevant here, knowing misrepresentations concerning the characteristics, safety, or quality of a product, and the concealment, suppression, or omission of a material fact in connection with the sale or advertisement of a product with intent that others rely upon the concealment, suppression, or omission.

112. Plaintiff alleges that Defendants represented to users and the public that Grok incorporated safeguards against the generation of non-consensual sexually explicit imagery of real, identifiable individuals, including safeguards specifically directed at protecting minors, while knowing that those representations were false, misleading, or materially incomplete, and/or that Defendants omitted material facts concerning the product's known capacity to generate such imagery, with the intent that users and the public rely on that omission.

113. To the extent this claim sounds in fraud, Plaintiff will identify with the particularity required by Ark. R. Civ. P. 9(b) the specific statements, the speaker, the time and place of each statement or omission, and the manner in which each was false or misleading.

114. As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff has suffered ascertainable loss and other damages recoverable under Ark. Code Ann. § 4-88-113.

**COUNT 8**
**VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT — UNCONSCIONABLE TRADE PRACTICES**

115. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

116. At all relevant times, Defendants xAI Corp., xAI LLC, and X.AI Holdings LLC (collectively, "xAI" or "Defendants") were "persons" engaged in "business, commerce, or trade" within the meaning of Ark. Code Ann. § 4-88-101, et seq., by marketing, distributing, and selling to the public, including to consumers and users located in the State of Arkansas, subscription access to the Grok artificial intelligence system, including the X Premium+ and SuperGrok product tiers and Grok's image- and video-generation features.

117. Ark. Code Ann. § 4-88-107(a)(10) makes unlawful "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Arkansas courts evaluate unconscionability under the totality of the circumstances surrounding a transaction, including the general commercial background and needs of the transaction, the relative bargaining positions of the parties, and whether the practice takes unfair advantage of a party who lacked a meaningful opportunity to understand or negotiate its terms. *See Arkansas Nat'l Life Ins. Co. v.*

*Durbin, 3 Ark. App. 170, 174–75, 623 S.W.2d 548, 551 (1981)*; *State v. R & A Inv. Co.*, 336 Ark. 289, 985 S.W.2d 299 (1999).

118. Defendants engaged in an unconscionable trade practice in violation of Ark. Code Ann. § 4-88-107(a)(10) by, among other things: (a) deploying and marketing Grok's image- and video-generation features to the public, including to accounts self-identified or reasonably identifiable as belonging to minors, without adequate age-verification, safeguards, or content-moderation controls to prevent the generation of sexually explicit imagery depicting real, identifiable minors; (b) possessing vastly superior knowledge of the capabilities and risks of Grok's generative tools, while Plaintiff and other consumers had no meaningful ability to assess, negotiate, or bargain over those risks before subscribing to or using Defendants' products, which were offered strictly on a take-it-or-leave-it basis; (c) representing, through public statements, terms of service, and marketing materials, that Grok incorporated safety guardrails against the generation of unlawful and exploitative content, while knowing or recklessly disregarding that those purported safeguards were inadequate to prevent the harms alleged herein; and (d) thereby causing and exposing Plaintiffs to severe emotional, reputational, and dignitary harm.

119. Pursuant to Ark. Code Ann. § 4-88-113(f), Plaintiff is entitled to recover her actual financial loss, together with reasonable attorneys' fees and costs.

**C. Arkansas Common Law Claims**

**COUNT 9**

**STRICT PRODUCTS LIABILITY**

120. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

121. Arkansas recognizes strict liability in tort for products that are placed in the stream of commerce in an unreasonably dangerous condition, as incorporated into and applied through the Arkansas Product Liability Act. A product is unreasonably dangerous when it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases or uses it, with the ordinary knowledge common to the community as to its characteristics.

122. Defendants' Grok product, as designed, developed, tested, and released by Defendants, was unreasonably dangerous under any or all of the following theories, pleaded in the alternative:

123. **Unreasonably Dangerous Design**: the product's generative capabilities permitted the creation of sexually explicit depictions of identifiable real minors without reasonably available design alternatives that would have prevented that outcome.

124. **Failure to Warn**: Defendants failed to provide adequate warnings of the product's capacity to generate non-consensual sexually explicit depictions of real, identifiable individuals, including minors.

125. **Failure to Adopt Reasonably Available Safety Measures**: Defendants failed to adopt safety measures, including input and output content moderation, that were reasonably available and would have prevented or mitigated the harm.

126. As a direct and proximate result of the product's unreasonably dangerous condition, Plaintiff suffered the injuries and damages alleged herein.

## COUNT 10
## NEGLIGENCE

127. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

128. Defendants owed Plaintiff a duty to exercise reasonable care in the design, development, testing, training, deployment, implementation, safety engineering, monitoring, and content moderation of the Grok product, and in Defendants' post-sale conduct with respect to unlawful content generated by that product, given the reasonably foreseeable risk that the product's generative capabilities could be used to create and disseminate non-consensual sexually explicit depictions of real, identifiable minors.

129. Defendants breached that duty of reasonable care. Plaintiff pleads a comprehensive negligence count comprising the following breaches, among others to be developed in discovery: negligent design; negligent development; negligent testing; negligent training of the underlying models; negligent deployment; negligent implementation; negligent safety engineering; negligent monitoring; negligent content moderation; negligent post-sale conduct; negligent failure to implement reasonable safeguards against the generation of non-consensual sexually explicit depictions of identifiable minors; negligent failure to timely remove the unlawful content once its existence was known or should have been known to Defendants; and negligent failure to timely report the unlawful content to appropriate authorities, to the extent a common-law duty to report or a duty voluntarily assumed by Defendants is established by the record.

130. These breaches all arise from, and are properly pleaded as, breaches of a single overarching duty of reasonable care owed by a developer and operator of generative-AI technology, rather than as separate and independent negligence counts.

131. As a direct and proximate result of Defendants' negligence, Plaintiff suffered severe emotional distress, reputational injury, invasion of privacy, and other damages in an amount to be proven at trial.

**COUNT 11**

**NEGLIGENT UNDERTAKING (RESTATEMENT (SECOND) OF TORTS §§ 323, 324A)**

132. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

133. Arkansas recognizes the tort of negligent undertaking, under which a party who voluntarily undertakes to render services that it should recognize as necessary for the protection of another person or that person's things is subject to liability for physical harm resulting from the failure to exercise reasonable care in performing that undertaking, where the failure to exercise such care increases the risk of harm, the undertaking is to perform a duty owed by another to the third person, or the harm is suffered because of reliance on the undertaking.

134. Defendants voluntarily undertook to moderate content generated by and disseminated through the Grok product; to detect child sexual abuse material and other unlawful sexually explicit depictions of identifiable individuals; to identify and prevent the generation of unlawful images depicting minors; to protect minors from exploitation through Defendants' generative technology; and to report illegal content to appropriate authorities, including through public representations describing Defendants' safety and moderation practices.

135. Defendants performed each of these undertakings negligently, including by failing to detect, prevent, or timely remove the sexually explicit depiction of Plaintiff, thereby increasing the risk of harm to Plaintiff and/or causing Plaintiff and others to rely to their detriment on Defendants' representations regarding the safety of the Grok product.

136. As a direct and proximate result of Defendants' negligent performance of these voluntarily assumed undertakings, Plaintiff suffered the injuries and damages alleged herein.

**COUNT 12**

**APPROPRIATION OF NAME AND LIKENESS / MISAPPROPRIATION OF IDENTITY**

137. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

138. Arkansas recognizes the common-law tort of invasion of privacy by appropriation of another's name or likeness, one of the four categories of invasion-of-privacy claims recognized under Arkansas law and the Restatement (Second) of Torts § 652C. Liability attaches where a defendant appropriates to its own use or benefit the name or likeness of another.

139. Defendants appropriated Plaintiff's likeness by using it, without consent, as the basis for generating sexually explicit depictions of Plaintiff through the Gro, for Defendants' own use and commercial benefit.

140. Plaintiff did not consent to this use of her likeness, and Defendants' appropriation of Plaintiff's likeness was undertaken for Defendants' benefit, including the benefit of promoting engagement with, and subscription revenue from Grok.

141. As a direct and proximate result of Defendants' appropriation of Plaintiff's likeness, Plaintiff has suffered damages in an amount to be proven at trial.

## COUNT 13
## FALSE LIGHT INVASION OF PRIVACY

142. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

143. Arkansas recognizes the tort of false-light invasion of privacy, consistent with the Restatement (Second) of Torts § 652E, which imposes liability where a defendant gives publicity to a matter that places another before the public in a false light, the false light would be highly offensive to a reasonable person, and the defendant acted with knowledge of or reckless disregard for the falsity of the depiction and the false light in which the other would be placed.

144. Defendants' Grok generative technology publicized fabricated, sexually explicit depictions portraying Plaintiff as engaging in sexual conduct that never in fact occurred, placing Plaintiff before the public, or before persons with access to the Grok product, in a false light that would be highly offensive to a reasonable person.

145. Defendants knew, or acted with reckless disregard as to whether, the depictions were false and would place Plaintiff in a highly offensive false light.

146. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages, including emotional distress, reputational harm, and injury to her standing in the community, in an amount to be proven at trial.

**COUNT 14**

**OUTRAGE (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

147. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

148. Arkansas recognizes the tort of outrage when (a) Defendants intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of their conduct; (b) the conduct was extreme and outrageous, utterly intolerable in a civilized community; (c) Defendants' conduct was the cause of Plaintiff's distress; and (d) the emotional distress sustained was so severe that no reasonable person could be expected to endure it.

149. Plaintiff grounds this claim in Defendants' alleged conduct in designing, marketing, and continuing to maintain and monetize a generative-AI product that Defendants knew, or recklessly disregarded a known risk, was capable of producing non-consensual sexually explicit depictions of identifiable real minors — and in continuing to make that functionality available,

without adequate safeguards, after Defendants knew or should have known of that capacity and of its use to generate the depiction of Plaintiff at issue in this case.

150. This conduct, if proven, exceeds the bounds of decency tolerated in a civilized community and goes beyond conduct that merely supports Plaintiff's negligence claim above.

151. As a direct and proximate result of this extreme and outrageous conduct, Plaintiff has suffered severe emotional distress of a nature and degree that no reasonable person should be expected to endure.

## DAMAGES

152. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

153. Plaintiff seeks all damages and other relief authorized by federal and Arkansas law, including compensatory damages, statutory damages, enhanced damages where authorized by law, punitive damages, disgorgement and restitution where authorized, attorney's fees and costs where recoverable by statute, prejudgment and post-judgment interest, permanent injunctive and equitable relief requiring the implementation of reasonable safety measures and other appropriate remedial actions, together with all further legal and equitable relief to which Plaintiff may be justly entitled.

## VI. CONCLUSION

154. Jane Doe did not choose to become sexually explicit content. She is 12-year old child. Defendants' technology made that choice for her, and Defendants' business made money from it. Photographs of a real child were turned, by a machine Defendants built, trained, priced, and shipped, into an image of her being sexually abused. These images and videos cannot be recalled, they can be copied infinitely, and Plaintiff will have to live with the existence this CSAM

for the rest of her life. That is not a glitch. It is the foreseeable output of a product Defendants designed without the safeguards they knew how to build, released without adequately testing for this precise and predictable harm, and continued to operate and monetize after every warning sign told them exactly what would happen to children like Jane Doe. Of tantamount concern is that Defendants knew of the exact type of harm that occurred in this case well before these injuries and this harm ever happened, and they did absolutely nothing about it.

155. No verdict can undo what was done to Plaintiff. It cannot restore the childhood image of herself that Defendants' product stole and defiled, and it cannot erase what now exists somewhere, permanently, because Defendants built a machine that would create it and did not build or implement the safeguards that would have stopped it. Congress enacted Masha's Law, and the Arkansas General Assembly enacted the Digital Forgery Act and the Vulnerable Victims Act, precisely so that when a child is sexually exploited through technology, the law does not stand by and call it innovation. Plaintiff asks this Court and jury to hold Defendants to that law, in full, and to make clear that no company gets to treat a child's body and identity as an acceptable cost of doing business.

**PRAYER FOR RELIEF**

156. WHEREFORE, Plaintiff Jane Doe respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally, and award the following relief:

a. Compensatory and actual damages, in an amount to be proven at trial, for Plaintiff's severe emotional distress, psychological injury, reputational harm, invasion of privacy, humiliation, loss of enjoyment of life, and all other damages caused by Defendants' conduct;

b. Statutory damages under 18 U.S.C. § 2255(a), in the greater of $150,000 or Plaintiff's actual damages;

c. Punitive damages, in an amount sufficient to punish Defendants for their knowing, reckless, and/or intentional conduct and to deter Defendants and other developers of generative-AI technology from similar conduct in the future;

d. Restitution and disgorgement of all profits, revenue, and other benefits unjustly retained by Defendants that are attributable to the unauthorized use of Plaintiff's likeness and to the conduct alleged herein;

e. Permanent injunctive relief requiring Defendants to: (i) identify, remove, and permanently delete all copies of the unlawful depictions of Plaintiff within Defendants' possession, custody, or control, and use commercially reasonable efforts to effect removal from all downstream platforms to which the material was disseminated; (ii) implement reasonable technical safeguards sufficient to prevent the generation of non-consensual sexually explicit depictions of identifiable real individuals, including minors; and (iii) refrain from further use of Plaintiff's name, image, or likeness without her express written consent;

f. Reasonable attorneys' fees and costs of suit, as mandated by Ark. Code Ann. § 16-118-119(b)(3) and as authorized under 18 U.S.C. § 2255(a) and 18 U.S.C. § 1595, and under any other applicable statute pleaded herein;

g. Pre-judgment and post-judgment interest as allowed by law;

h. A trial by jury on all issues so triable; and

i. Such other and further relief, at law or in equity, as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial for all claims so triable.

Respectfully Submitted,

**THE POTTS LAW FIRM, LLP**

*/s/ J. Ryan Fowler*_________
**J. Ryan Fowler**
rfowler@potts-law.com
Arkansas Bar No. 2014109
**Derek H. Potts**
dpotts@potts-law.com
Arkansas Bar No. 2006131
**Emily B. Marlowe *(Pro Hac Vice Pending)***
Texas Bar No. 24076206
emarlowe@potts-law.com
3737 Buffalo Speedway, Suite 1900
Houston, Texas 77098
Phone: (713)963-8881
Facsimile: (913)583-5388

**ATTORNEYS FOR PLAINTIFF**